## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **LINDA BARRICK,**<br>*on her own behalf and on behalf*<br>*of all other similarly situated,*<br><br>**Plaintiffs,**<br><br>v.<br><br>**PNGI CHARLES TOWN GAMING, LLC,**<br>**P.O. Box 551**<br>**Flowing Springs Road**<br>**Charles Town, WV 25414,**<br><br>**d/b/a**<br><br>**HOLLYWOOD CASINO AT CHARLES TOWN RACES,**<br>**580 E. 5th Avenue**<br>**Ranson, WV 25438,**<br><br>    Serve:    **CT Corporation System**<br>            **5400 D Big Tyler Road**<br>            **Charleston, WV 25313,**<br><br>**and**<br><br>**PENN NATIONAL GAMING, INC.,**<br>**825 Berkshire Blvd.**<br>**Wyomissing, PA 19610,**<br><br>    Serve:  **CT CORPORATION SYSTEM**<br>            **1200 South Pine Island Road**<br>            **Plantation, Florida 33324,**<br><br>                **Defendants.** | ELECTRONICALLY<br>FILED<br>Nov 08 2017<br>U.S. DISTRICT COURT<br>Northern District of WV<br><br><br>**Case No.:** 3:17-CV-138 (Groh)<br>_____ |

## CLASS ACTION AND COLLECTIVE ACTION CIVIL COMPLAINT
## FOR MONETARY AND EQUITABLE RELIEF

Plaintiff Linda Barrick ("Plaintiff" or "Barrick") on behalf of herself and on behalf of all

other similarly-situated employees and/or former employees known and unknown, by and

through counsel, files this Civil Complaint for Equitable and Monetary Relief against Penn

1

National Gaming, Inc. ("PNGI"), and PNGI Charles Town Gaming, LLC, d/b/a Hollywood

Casino at Charlestown Races ("Hollywood Casino") (collectively, "Defendants").

## Introduction

1.      Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure

23(b)(3), asserting claims for breach of contract and violations of the West Virginia Wage

Payment and Collection Act, W. Va. Code, §21-5-1, *et seq*. ("WPCA"). Plaintiff also brings a

Collective Action on behalf of herself and the other similarly-situated employees and/or former

employees, who may participate as permitted, under the Fair Labor Standards Act, 29 U.S.C. §

207, *et seq*. ("FLSA"), against Defendants.

2.      PNGI, a Pennsylvania for-profit corporation, is a casino operator and, as is

relevant to this complaint, manages operations at PNGI's subsidiary, PNGI Charles Town

Gaming, LLC, a West Virginia limited liability company that does business as Hollywood

Casino at Charlestown Races.

3.      Plaintiff and all other similarly situated employees work or worked for PNGI's

subsidiary, Hollywood Casino, at Charles Town Races location in West Virginia.

4.      This lawsuit stems from Plaintiff's and other similarly-situated employees' and/or

former employees' entering into an enforceable written contract with PNGI and Hollywood

Casino that mandates that any and all earned tips and gratuities received by Plaintiff and other

similarly-situated employees be "Placed in a common pool for complete distribution pro rata for

each respective day of the week among all Dealers, with the distribution based upon the number

of hours each Dealer has worked for each respective day of the week." However, on days when

the common pool generates higher hourly wages for the Dealers, Defendants, at their discretion

and without consultation with or notification to the Dealers and in violation their contract with

2

Plaintiff and other similarly-situated employees, remove some portion of the funds from the tip pool to finance payment of future paid time off, which Plaintiff and other similarly-situated employees may or may not eventually receive.

5.     This lawsuit further stems from Plaintiff's and other similarly-situated employees' and/or former employees' entering into an enforceable written contract with PNGI and Hollywood Casino that mandates that any and all earned tips and gratuities received by Plaintiff and other similarly-situated employees be "Placed in a common pool for complete distribution pro rata for each respective day of the week among all Dealers, with the distribution based upon the number of hours each Dealer has worked for each respective day of the week." However, on days when the common pool generates higher hourly wages for the Dealers, Defendants, at their discretion and without consultation with or notification to the Dealers and in violation their contract with Plaintiff and other similarly-situated employees, remove some portion of the funds from the tip pool to finance payment of future paid time off, which Plaintiff and other similarly-situated employees may or may not eventually receive such that they do not receive all of their wages for their work or services due and owing at least twice every month and with no more than nineteen days between settlements, as required by the WPCA.

6.     This lawsuit also stems from Plaintiff's and other similarly-situated employees' and/or former employees' participation by PNGI and Hollywood Casino in a "tip pool" that violates the requirements of the FLSA because Defendants used the employee's tips for a reason other than that which is statutorily permitted in 29 U.S.C. § 203(m), and thus the employees were not permitted to retain all of their tips, as required by 29 U.S.C. § 203(m). As a result of Defendants' knowing and willful failures to pay Plaintiff and other similarly-situated employees and/or former employees at a rate commensurate with federal minimum wage requirements,

Defendants are liable to Plaintiff and other similarly-situated employees and/or former employees for violations of the FLSA and the WPCA.

7.     Plaintiff and other similarly-situated employees and/or former employees all share or shared similar job titles, job skills and job responsibilities and were subjected to the same terms and conditions of employment, as well as the same unlawful failures to pay all federal minimum wages legally due and owing to them, in violation of the FLSA and WPCA.

### Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over the claims presented pursuant to the FLSA, a law of the United States regulating interstate commerce, and specifically under the provisions of Section 16 of said Act, as amended (29 U.S.C. § 216(b)), and pursuant to 28 U.S.C. § 1331.

9.      This Court has supplemental jurisdiction over the state claims presented pursuant to, in accordance with, 28 U.S.C. § 1367.

10.     Venue in this district and in this division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(3) and 1391(c), because Defendants conducts business in this district and division and because the events that gave rise to this complaint occurred in this district.

### Parties

11.     Plaintiff, at all times relevant to this Complaint, was and is a natural person and citizen and resident of Jefferson County, West Virginia; has been employed by Defendants since 2011; and has given her written consent writing to become a party plaintiff in the FLSA representative action on behalf of herself and the other employees similarly situated. (Plaintiff's Notice of Consent to Opt-In Form is attached hereto as Exhibit 1.)

12.     Defendant PNGI, a Pennsylvania for-profit corporation, manages operations at

PNGI's subsidiary, Defendant Hollywood Casino, a West Virginia for-profit corporation.

13.     For purposes of this Complaint, and pursuant to the WPCA, W.Va. Code 21-5-1, *et seq.,* Defendants are joint employers.

14.     Defendants acted through unified operation and/or common control so as to constitute an "Enterprise" within the meaning of § 203(r) of the FLSA that the Defendants' Enterprise has gross revenue in excess of $500,000 per annum, is engaged in the production of goods for interstate commerce and/or uses and handles goods which have moved in interstate commerce as such terms are defined in FLSA, employs ten (10) or more persons, and is a joint employer subject to the jurisdiction of the FLSA.

15.     For the purposes of this Complaint, and pursuant to 29 CFR 791.2(b)(2), Defendants are joint employers, and PNGI and Hollywood Casino are subject to the personal jurisdiction of this Court and the Courts of the State of West Virginia.

16.     Presently, there are approximately 226 similarly-situated other persons who are currently employed by Defendants as part of their workforces in the State of West Virginia and are Defendants' "employee(s)" as that term is defined by the WPCA.

17.     There are approximately the same number of similarly-situated other persons who were *formerly* employed by Defendants as part of their workforces in the State of West Virginia and were Defendants' "employee(s)" as that term is defined by the WPCA.

### Rule 23(b)(3) Class Factual Allegations

18.     Plaintiff and all other similarly situated employees work or worked for PNGI's subsidiary, Hollywood Casino, at its Charles Town Races location.

19.     Defendants employed Plaintiff and all other similarly situated employees as "Dealers" at Hollywood Casino at Charlestown Casino from about May 2011 to the present.

20.     Defendants require all Dealers as a matter of contract to participate in a tip pool that is set forth in a written contract that requires that any and all earned tips and gratuities be "Placed in a common pool for complete distribution pro rata for each respective day of the week among all Dealers, with the distribution based upon the number of hours each Dealer has worked for each respective day of the week."

21.     Dealers submit all tips into this tip pool as per their contract with Defendants and perform their job duties and responsibilities in reliance on their expectation that they will be fully compensated for their tips paid in, as required by as per Defendants' tip pool compensation policy contract mandating that there will be a complete distribution pro rata for each respective day of the week among all Dealers, with the distribution based upon the number of hours each Dealer has worked for each respective day of the week.

22.     Dealers receive tips in varying amounts depending on the daily customer base, and at Hollywood Casino the daily tip pool generates an average of approximately $21.50 per hour per Dealer.  However, some days, the tip pool can generate an hourly wage of $60.00 to $70.00 per Dealer.

23.     On days when the tip pool generates higher hourly wages for the Dealers, Defendants, at their discretion and without consultation with or notification to the Dealers and in violation of the contract, remove some portion of the funds from the tip pool to finance payment of Dealers' future paid time off. The forgoing, in turn, reduces the daily tip rate and overall daily hourly wage for those Dealers working on such days when the tip pool generates higher hourly wages for the Dealers by not allowing the Dealers to collectively retain all of their tips as contractually agreed to by the Parties.

24.     Defendants compensate Dealers for paid time off at a rate of $15.50, and the

6

monies paid in excess of a Dealer's base hourly wage (somewhere between $3.65/hour and $6.50, depending upon seniority) comes from the tip pool monies that were taken from the Dealers and in violation of Defendants' tip pool compensation policy contract.

25.    Moreover, in contravention of Defendants' tip pool compensation policy contract requiring Defendants to pay out all tip pool funds to the Dealers pro rata based on the number of hours worked in the week in which the tips were procured, Dealers are awarded paid time off at different rates based on their seniority.  Generally, Defendants follow the following schedule for full time Dealers:

      a.   Dealers with less than 1 year of completed service accrue 4.32 hours of paid leave per period and are allowed a maximum of 112 hours of paid leave per year.

      b.   Dealers with 1 to 5 years of completed service accrue 6.16 hours of paid leave per pay period and are allowed a maximum of 160 hours of paid leave per year.

      c.   Dealers with 5 to 15 years of completed service accrue 7.696 hours of paid leave per period and are allowed a maximum of 200 hours of paid leave per year.

      d.   Dealers with 15 or more years of completed service accrue 9.232 hours of paid leave per pay period and are allowed a maximum of 240 hours of paid leave per year.

26.    Defendants require that all requests for PTO be submitted to management for authorization, and per Defendants' policy, "'Authorized PTO' is PTO used with prior notice and management approval."

27.    In light of Defendants' policy that a Dealer must obtain approval to use PTO and that the PTO is funded by the converted tips which the Dealers earned and had an absolute right to receive when they were earned, Defendants have converted the tips to finance paid time off

for employees in a manner disproportionate from the amounts that were actually due and owing. Moreover, Defendants reserve the right to decide whether or not any particular Dealer will be approved to use the PTO financed by the converted tips.

28. Defendants have, at all times, failed to inform employees that Defendants remove and retain tips from the tip pool in contravention of Defendants' tip pool compensation policy contract.

29. As a result of Defendants' breach of contract, Plaintiff and similarly-situated employees have suffered economic damages.

30. Accordingly, Plaintiff brings this Class Action on behalf of herself and the other similarly-situated employees and/or former employees.

31. The cohort of similarly-situated employees which Plaintiff seeks to represent in her claim regarding the claims for breach of contract and failure to pay all wages due and owing under the WPCA, the class action cohort is defined as follows:

> **All Dealers employed by Defendants who had any tip wages withheld by Defendants as part of Defendants' tip pool, thus not allowing them to retain all of their tips as required by Defendants' tip pool compensation policy contract.**

32. Plaintiff and the Class are entitled to all wages improperly withheld by Defendants.

33. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in employment litigation.

34. Plaintiff will fairly and adequately protect the interests of herself and all other similarly-situated employees and/or former employees.

35. A Class Action is superior to other available methods for the fair and efficient adjudication of the class claims under the WPCA and for breach of contract.

36. The exact amounts owed to Plaintiff and the putative class members is unknown

but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

37.     The similarly-situated employees may be identified from Defendants' records and may be notified of the pendency of this representative action in the manner the court directs.

38.     The interests of the similarly-situated employees will be fairly and adequately protected by Plaintiff and her counsel, and this action may be maintained as a representative action because Defendants has acted or refused to act on grounds generally applicable to Plaintiff and the other similarly-situated employees, thereby making appropriate final and injunctive relief or corresponding declaratory relief with respect to the similarly-situated employees.

### Named Plaintiff's Allegations

39.     In or about May 2011, Defendants hired Plaintiff to perform services as a Dealer at Hollywood Casino.

40.      Defendants compensated Barrick initially at a rate of $5.50/hour plus tips, and Defendants eventually increased her wage to $6.50/hour plus tips.

41.     During each shift Defendants requires Barrick to allocate the totality of her tips to a tip pool shared with all other Dealers[1] on the same shift at Hollywood Casino.

42.     At the end of each shift, the tips are split equally among the Dealers on that shift.

43.     Dealers receive tips in varying amounts depending on the daily customer base.

44.     The daily tip pool generates an average of approximately $21.50 per hour per Dealer. However, some days, the tip pool can generate an hourly wage of $60.00 to $70.00 per Dealer.

---

[1]     For the purposes of this complaint, "Dealers" at Charlestown Casino does not refer to poker room dealers.

45.     On such days when the tip pool generates higher hourly wages for the Dealers, Defendants, at their discretion and without notifying the Dealers, remove funds from the tip pool to support future payment of Dealers' paid time off.  This, in turn, reduces the daily tip rate and overall daily hourly wage for Plaintiff and for other Dealers.

46.     Defendants violated and continue to violate the contract and state wage and hour requirements by not allowing to Dealers all to retain all of their tips, as required by Defendants' tip pool compensation policy contract.

## Class Action Facts

47.     Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure 23(b)(3) asserting claims under West Virginia Wage Payment and Collection Act, W. Va. Code, §21-5-1, *et seq*. ("WPCA"), and for breach of contract on behalf of themselves and a class of all past, present and future Dealers of Defendants during the relevant statutory period.

48.     The class is so numerous that joinder of all such persons individually is impractical.  On information and belief, the class exceeds 200 present and 200 former Dealers employed by Defendants.

49.     Plaintiff and the class have all been similarly affected by Defendants' breach of Defendants' tip pool compensation policy contract.

50.     Plaintiff and the class they represent may be reluctant to raise individual claims for fear of retaliation.  Defendant Hollywood Casino, for example, is the largest employer in the Ranson, West Virginia area and the only casino within at least 75 miles, and employees thus likely fear retaliation.

51.     There are questions of law or fact common to the class that predominate over any questions affecting only individual members, which include, but are not limited to, the following:

10

a. Whether Defendants breached Defendants' tip pool compensation policy contract when they did not Dealers to retain all of their tips as required by Defendants' tip pool compensation policy contract;

b. Whether Defendants systematically withheld compensation and misappropriated tips that were entitled to the Plaintiff Class as per Defendants' tip pool compensation policy contract in violation of the WPCA;

52.     Plaintiff's claims are typical of the claims of the above described class because:

a. Plaintiff is a members of the class;

b. the interests of the Plaintiff are co-extensive with the interests of the other members of the class;

c. Plaintiff's claims arise out of the same unlawful practices, policies and/or course of conduct that form the basis of the claims of the class;

d. Plaintiff's claims are based on the same legal and remedial theories as those of the class;

e. there is a lack of adverse interests between Plaintiff and the other members of the class; and

f. common questions exist.

53.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in employment and class action litigation.

54.     Plaintiff will fairly and adequately protect the interests of the class.

55.     The instant case meets both the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3).

56.     The common questions of law and fact regarding Defendants' breach of

Defendants' tip pool compensation policy contract and wage nonpayment predominate over any individual differences in class members' claims.

57.     A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the WPCA and for breach of contract and pursuant to Federal Rule of Civil Procedure 23(b)(3), this case should proceed as a class action in respect to the economic damages owed to Plaintiff and the putative class members.

58.     If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a serious hardship to members of the class, the Court and the Defendants and creating a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.  Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

59.     Because members of the class were subject to the same unlawful payment policies and procedures, class members have little interest in individually controlling the prosecution of separate actions and, in most if not all cases, would be unlikely to obtain counsel to adjudicate their individual claims. To date, on information and belief, separate litigation has not commenced against these Defendants for the unlawful compensation practices at issue here.

60.     The case does not present individualized or exceedingly complex factual or legal issues that would render management of the suit as a class action difficult.  Rather, Plaintiff and the class she seeks to represent were all subject to the same unlawful practices that give rise to the instant complaint, and Defendants' practices and procedures present the central and overriding issues in the case.

61.     The similarly situated employees that belong to the class may be identified from Defendants' records and may be notified of the pendency of this representative action in the manner the Court directs.

## FLSA FACTS

62.     Plaintiff and all other similarly situated employees work or worked for PNGI's subsidiary, Hollywood Casino, at its Charles Town Races location.

63.     Defendants employed Plaintiff as a "Dealer" at Hollywood Casino at Charlestown Casino from about May 2011 to the present, and Defendants compensated Plaintiff and other similarly situated employees employed as "Dealers" as "tipped employees" as that term is defined by the FLSA.

64.     Section 3(m) of the FLSA permits an employer to take a tip credit toward its minimum wage obligation for tipped employees equal to the difference between the required cash wage (which must be at least $2.13) and the federal minimum wage. Thus, the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the federal minimum wage of $7.25 minus the minimum required cash wage of $2.13).

65.     Defendants utilized the FLSA's tax credit provisions in order to compensate Dealers at rates of between $3.65/hour and $6.50 per hour, plus tips.

66.     As a matter of policy and contract Defendants requires all Dealers to participate in a tip pool that is set forth in a written contract that requires that any and all earned tips and gratuities be "Placed in a common pool for complete distribution pro rata for each respective day of the week among all Dealers, with the distribution based upon the number of hours each Dealer has worked for each respective day of the week."

67.     Dealers submit all tips into this tip pool as per Defendants' tip pool compensation

policy and perform their job duties and responsibilities in reliance on their expectation that they will be fully compensated for their tips paid in, as required by as per Defendants' tip pool compensation policy mandating that there will be a complete distribution pro rata for each respective day of the week among all Dealers, with the distribution based upon the number of hours each Dealer has worked for each respective day of the week..

68.     Dealers receive tips in varying amounts depending on the daily customer base, and at Hollywood Casino the daily tip pool generates an average of approximately $21.50 per hour per Dealer.  However, some days, the tip pool can generate an hourly wage of $60.00 to $70.00 per Dealer.

69.     On days when the tip pool generates higher hourly wages for the Dealers, Defendants, at their discretion and without consultation with or notification to the Dealers and in violation of Section 3(m) of the FLSA and Defendants' tip pool compensation policy, remove some portion of the funds from the tip pool to finance payment of Dealers' future paid time off.

70.     The forgoing, in turn, reduces the daily tip rate and overall daily hourly wage for those Dealers working on such days when the tip pool generates higher hourly wages for the Dealers by not allowing the Dealers to collectively retain all of their tips, as required by 29 U.S.C. § 203(m) and Defendants' tip pool compensation policy.

71.     Defendants compensate Dealers for paid time off at a rate of $15.50, and the monies paid in excess of a Dealer's base hourly wage (somewhere between $3.65/hour and $6.50, depending upon seniority) comes from the tip pool monies that were illegally taken from the Dealers.

72.     Moreover, in contravention of Defendants' tip pool compensation policy requiring it to pay out all tip pool funds to the Dealers pro rata based on the number of hours worked in the

week in which the tips were procured, Dealers are awarded paid time off at different rates based on their seniority.  Generally, Defendants follow the following schedule for full time Dealers:

    a.   Dealers with less than 1 year of completed service accrue 4.32 hours of paid leave per period and are allowed a maximum of 112 hours of paid leave per year.

    b.   Dealers with 1 to 5 years of completed service accrue 6.16 hours of paid leave per pay period and are allowed a maximum of 160 hours of paid leave per year.

    c.   Dealers with 5 to 15 years of completed service accrue 7.696 hours of paid leave per period and are allowed a maximum of 200 hours of paid leave per year.

    d.   Dealers with 15 or more years of completed service accrue 9.232 hours of paid leave per pay period and are allowed a maximum of 240 hours of paid leave per year.

73.    Defendants require that all requests for PTO be submitted to management for authorization, and per Defendants' policy, "'Authorized PTO' is PTO used with prior notice and management approval."

74.    In light of Defendants' policy that a Dealer must obtain approval to use PTO and that the PTO is funded by the converted tips which the Dealers earned and had an absolute right to receive when they were earned, Defendants have converted the tips to finance paid time off for employees in a manner disproportionate from the amounts that were actually due and owing. Moreover, Defendants reserve the right to decide whether or not any particular Dealer will be approved to use the PTO financed by the converted tips.

75.    Defendants have, at all times, failed to inform employees that Defendants remove and retain tips from the tip pool in contravention of 29 U.S.C. § 203(m). As a result of Defendants' institution of an invalid tip pool and violation of Defendants' tip pool compensation policy, Plaintiff and similarly-situated employees have suffered economic damages.

76.    Accordingly, Plaintiff brings this Representative Action on behalf of herself and the other similarly-situated employees and/or former employees.

77.    The cohort of similarly-situated employees which Plaintiff seeks to represent in her claim regarding the improper use of the tip pool for purposes of a paid time off fund, the FLSA representative action cohort is defined as follows:

> **All Dealers employed by Defendants who had any tip wages withheld by Defendants as part of Defendants' tip pool, thus not allowing them to retain all of their tips as required by 29 U.S.C. § 203(m).**

78.    Plaintiff and the Class are entitled to the difference between their hourly rate and the applicable federal minimum wage for all hours worked.

79.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in employment litigation.

80.    Plaintiff will fairly and adequately protect the interests of herself and all other similarly-situated employees and/or former employees.

81.    A Collective Action is superior to other available methods for the fair and efficient adjudication of the class claims under the FLSA.

82.    The exact amounts owed to Plaintiff and the putative class members is unknown but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

83.    The similarly-situated employees may be identified from Defendants' records and may be notified of the pendency of this representative action in the manner the court directs.

84.    The interests of the similarly-situated employees will be fairly and adequately protected by Plaintiff and her counsel, and this action may be maintained as a representative action because Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other similarly-situated employees, thereby making appropriate final and

16

injunctive relief or corresponding declaratory relief with respect to the similarly-situated employees.

## Named Plaintiff's Allegations

85.     In or about May 2011, Defendants hired Plaintiff to perform services as a Dealer at Hollywood Casino.

86.     Defendants compensated Barrick initially at a rate of $5.50/hour plus tips, and Defendants eventually increased her wage to $6.50/hour plus tips.

87.     During each shift Defendants requires Barrick to allocate the totality of her tips to a tip pool shared with all other Dealers on the same shift at Hollywood Casino.

88.     At the end of each shift, the tips are split equally among the Dealers on that shift.

89.     Dealers receive tips in varying amounts depending on the daily customer base.

90.     The daily tip pool generates an average of approximately $21.50 per hour per Dealer. However, some days, the tip pool can generate an hourly wage of $60.00 to $70.00 per Dealer.

91.     On such days when the tip pool generates higher hourly wages for the Dealers, Defendants, at their discretion and without notifying the Dealers, remove funds from the tip pool to support future payment of Dealers' paid time off.  This, in turn, reduces the daily tip rate and overall daily hourly wage for Plaintiff and for other Dealers.

92.     Defendants violated and continue to violate federal wage and hour requirements by not allowing to Dealers all to retain all of their tips, as required by 29 U.S.C. § 203(m).

## COUNT I
**Breach of Contract,
Common Law.
(Class Action)**

93.     Plaintiff hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

94.     Defendants required Plaintiff and the other similarly-situated employees to be bound by Defendants' tip pool compensation policy as a term and condition of employment, and Defendants provided compensation and Plaintiffs provided labor as mutual consideration so as to convert Defendants' tip pool compensation policy into an enforceable contract that is and was binding on the Parties.

95.     Defendants breached their compensation contract with Plaintiff and the other similarly-situated employee when they failed and/or refused to pay to Plaintiff and the other similarly-situated employees the wages owed to them as required by Defendants' tip pool compensation policy contract.

96.     Plaintiff and the other similarly-situated employees are entitled to the retained tip monies, as required by Defendants' tip pool compensation policy contract.

97.     As a result of Defendants' unlawful conduct, Plaintiff and the other similarly situated employees suffered a loss of wages, and thus Defendants is liable to Plaintiff and the other similarly-situated employees for their economic damages including but not limited to such wages, consequential damages, as well as any other legal and equitable relief afforded under West Virginia common law.

## COUNT II
### West Virginia Wage Payment and Collection Act,
### W. Va. Code, §21-5-1, *et seq.*
### (Class Action)

98.     Plaintiff hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

99.     Defendants are employers of Plaintiff and members of the plaintiff class within the meaning of the WPCA.

100.    Defendants failed and/or refused to pay to the Plaintiff and the other similarly-situated employees the wages owed to them under WPCA when they did not permit Dealers to retain all of their tips as required by Defendants' tip pool compensation policy.

101.    Plaintiff and the other similarly-situated employees are entitled to the retained tip monies, as required by Defendants' tip pool compensation policy.

102.    As a result of Defendants' unlawful conduct, Plaintiff and the other similarly situated employees suffered a loss of wages, and thus Defendants is liable to Plaintiff and the other similarly-situated employees for their economic damages including but not limited to such wages, liquidated damages, and the costs of the action, including costs or fees of any nature, and reasonable attorney's fees.

## COUNT III
### Fair Labor Standards Act of 1938 (FLSA),
### 29 U.S.C. § 201, *et seq.*
### (Collective Action)

103.    Plaintiff hereby incorporates all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

104.    Defendants are "employers" as that term is defined in the FLSA.

105.    Plaintiff and the other similarly-situated employees are or were Defendants'

employees within the meaning of the FLSA.

106.    Defendants failed to compensate Plaintiff and similarly-situated employees according to the federal minimum wage.

107.    Defendants willfully failed and/or refused to pay to the Plaintiff and the other similarly-situated employees the wages owed to them under FLSA when they did not allow Dealers to retain all of their tips as required as required by 29 U.S.C. § 203(m).

108.    Plaintiff and the other similarly-situated employees are entitled to the retained tip monies, as required by as required by 29 U.S.C. § 203(m).

109.    Because Defendants operated an invalid tip pool, and because Plaintiff and the other similarly-situated employees were denied their full tips in violation of the FLSA, Plaintiff and the other similarly-situated employees are entitled to the difference between their hourly rate and the applicable federal minimum wage for all hours worked.

110.    Defendants' actions were taken with willful disregard for the rights of Plaintiff and other similarly situated employees under the FLSA, and as a result Defendants are liable to Plaintiff and the other similarly-situated employees for their economic damages including but not limited to such wages, liquidated damages, and the costs of the action, including costs or fees of any nature, and reasonable attorney's fees.

## Prayer for Relief

WHEREFORE, Plaintiff requests that this Honorable Court:

I.    Certify this case as a class action pursuant to Federal Rule of Civil Procedure 23;

II.    Appoint Plaintiff and her counsel of record to represent the class;

III.    Declare that Defendants committed one or more of the following acts:

a.    Knowingly and willfully violated the WPCA with respect to Plaintiff and the

class by not allowing Dealers to retain all of their tips as required by
Defendants' tip pool compensation policy;

    b.   Caused Plaintiff and the class to not be paid all wages due and owing, as
required by the WPCA, without any bona fide dispute;

    c.   Breached Defendants' tip pool compensation policy contract with Plaintiff
and the class and thereby caused them to sustain damages as the result of
Defendants' of contract; and

    d.   Issue any other declaration as the Court deems appropriate;

IV.    Certify a representative action pursuant to FLSA;

V.    Appoint Plaintiff and her counsel of record to represent the similarly situated
employees who opt-in to the FLSA representative action;

VI.    Declare that Defendants committed one or more of the following acts:

    a.   Knowingly and willfully violated the FLSA with respect to Plaintiff and the
class;

    b.   Cause Plaintiff and the class to not be paid the minimum wage, as required by
the FLSA without any bona fide dispute; and

    c.   Issue any other declaration as the Court deems appropriate;

VII.    Award judgment in the amount of the difference between the wages actually paid to
the classes and the wages owed to them under the FLSA, WPCA, and Defendants' tip
pool compensation policy contract;

VIII.    Award judgment for the classes' economic damages in amounts according to proof as
provided for in the FLSA, WPCA, and West Virginia common law;

IX.    Award liquidated damages;

X.      Award interest due on unpaid wages;

XI.     Award reasonable attorney's fee and the costs of this action; and

XII.    Award any such further relief this Honorable Court deems just and proper to award.

Dated:  November 8, 2017.

Respectfully Submitted,

/s/ Garry G. Geffert
Garry G. Geffert, W.Va. Bar ID, 1364
Attorney at Law
114 S. Maple Ave.
P.O. Box 2281
Martinsburg, WV25402
Voice:  (304) 262 – 4436
Fax:  (304) 596-2474
E: geffert@wvdsl.net

Nicholas Woodfield (to be admitted *pro hac vice*)
R. Scott Oswald, (to be admitted *pro hac vice*)
Andrew M. Witko (to be admitted *pro hac vice*)
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com
soswald@employmentlawgroup.com
awitko@employmentlawgroup.com
*Counsel for the Plaintiff*