IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**LINDA BARRICK**, on her own
behalf and on behalf of all
others similarly situated,

      Plaintiffs,

v.                                                          CIVIL ACTION NO.: 3:17-CV-138
                                                            (GROH)

**PNGI CHARLES TOWN GAMING,
LLC d/b/a HOLLYWOOD CASINO
AT CHARLES TOWN RACES**, and
**PENN NATIONAL GAMING, INC.**,

      Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Now before the Court is the Defendants' Motion for Summary Judgment [ECF No. 36], filed on December 21, 2018. The Plaintiff filed a response in opposition on January 11, 2019. ECF No. 40. The Defendants filed a reply in support of their motion on January 25, 2019. ECF No. 42.

      Also before the Court is the Plaintiff's Cross-Motion for Partial Summary Judgment [ECF No. 38], filed on December 31, 2018. ECF No. 38. The Defendants filed a response in opposition on January 22, 2019. The Plaintiff filed a reply in support of her motion on February 5, 2019. ECF No. 46. While the Plaintiff requested oral argument on her motion, the Court finds that no additional information will assist the Court in making its decision.

      Accordingly, these matters have been fully briefed and are now ripe for review.

The Court has considered the motions for summary judgment together. For the following reasons, the Defendants' Motion for Summary Judgment is granted, and the Plaintiff's Cross Motion for Partial Summary Judgment is denied.

## I. Factual and Procedural Background

The Plaintiff in this case is employed by Defendant PNGI Charles Town Gaming, LLC, d/b/a Hollywood Casino at Charles Town Races ("Hollywood Casino") as a table games dealer. On January 31, 2018, the Plaintiff filed her Second Amended Complaint [ECF No. 17] challenging Hollywood Casino's "tip pool" policy and PTO policy. Specifically, the Plaintiff alleges that Hollywood Casino's tip pool and PTO policies violate the Fair Labor Standards Act ("FLSA") and the West Virginia Wage Payment and Collection Act ("WPCA"). The Plaintiff further alleges that the implementation of Hollywood Casino's tip pool and PTO policies constitutes a breach of contract.

The following facts are undisputed.[1] Table games dealers ("dealers") at Hollywood Casino, such as the Plaintiff, are compensated based on an hourly rate of pay, plus tips, also known as "tokes." When a customer gives a dealer a toke, the dealer immediately deposits the toke into a locked toke box attached to the gaming table. To ensure that tokes are fairly distributed among the dealers working on a given day, and to avoid issues such as dealers fighting for specific gaming tables or high-tipping customers, Hollywood Casino has implemented a tip pooling policy. Under the policy, only hourly dealers participate in the pool. The pool operates as follows.

---

[1] These facts are drawn from the Defendants' Motion for Summary Judgment [ECF No. 36] and the Plaintiff's Opposition to the Defendant's Motion for Summary Judgment [ECF No. 40]. All facts included in this section are uncontested.

At the end of each gaming day,[2] a team of dealers, known as the toke committee, oversee the collection, counting, and verification of the toke pool. Any dealer may volunteer to serve on the toke committee. The toke administrator, who is elected by and from Hollywood Casino's pool of full-time dealers, oversees this process. Once the toke committee has counted and verified the total toke for that gaming day, the committee deposits the toke collection with the casino cage, and the amount of the toke deposit is reported to Hollywood Casino's accounting department.

After the toke count is finalized, the amounts to be distributed to each eligible employee are calculated pursuant to a standard process and formula. The first step in the process is to compute the total number of "hours worked" by all eligible employees for that gaming day. Included in this calculation are: (1) the actual number of hours worked by dealers, on all three shifts, for that gaming day; (2) the number of hours credited to the toke committee for that gaming day;[3] and (3) the number of hours of authorized paid time off (PTO) for that gaming day. In order to be considered "authorized PTO" for toke pool participation, PTO must have been scheduled at least fourteen days in advance and approved by management.[4]

Once the total number of "hours worked" is calculated, the individual shares of the toke pool are calculated pursuant to a similar standard formula. First, the toke administrator receives a flat rate of $150.00 from the toke pool per payroll period for his

---

[2] The gaming day at Hollywood Casino runs for a continuous 24-hour period and includes three shifts.
[3] A toke counter is credited with 1 hour worked, and a toke verifier is credited with 1.5 hours worked.
[4] If PTO is unauthorized, dealers are still permitted to take leave and are compensated their normal hourly wage. However, dealers using unauthorized PTO are not permitted to participate in the tip pool. Unauthorized PTO is still subtracted from the dealer's PTO bank.

or her services, or $10.71 per gaming day (*i.e.*, the $150.00 flat rate divided by the 14-day payroll period). Then, dealers with authorized PTO are paid $10.00 per hour of PTO from that gaming day's toke pool, in addition to the hourly wage that is paid to them by Hollywood Casino. The payments to the toke administrator and for authorized PTO users are deducted from the overall toke amount for that gaming day.

After toke administrator and PTO amounts are deducted, the remaining toke for that gaming day is divided by the number of hours worked by all dealers and the number of hours credited to the toke committee. This calculation results in an hourly toke rate applicable to that gaming day. Each dealer's individual share of the toke pool is calculated by multiplying his or her total number of hours worked, including hours credited for serving on the toke committee, by the hourly toke rate. Each dealer's share is paid out through normal channels on the next regularly scheduled payday. Ultimately, the entire toke collection is fully distributed to the dealers who are entitled to participate in the tip pool for that gaming day. Hollywood Casino does not retain or withhold any amount from the tip pool.

The Plaintiff challenges Hollywood Casino's tip pool on three grounds. In Count I, the Plaintiff alleges that Hollywood Casino breached its compensation contract with its employees because Hollywood Casino "failed and/or refused to pay to Plaintiff and other similarly-situated employees the wages owed to them as required by Defendants' tip pool compensation policy contract." ECF No. 17 at 22. In Count II, the Plaintiff argues that the "Defendants failed and/or refused to pay to the Plaintiff and the other similarly-situated employees the wages owed to them under WPCA when they did not permit Dealers to

4

retain all of their tips as required by Defendants' tip pool compensation policy." Id. Finally, in Count III, the Plaintiff alleges the Defendants "maintained an illegal tip pool that allow[s] employees who are not at work to participate in the tip pool even though they are not persons who 'customarily and regularly receive tips' under 29 CFR § 531.34," in violation of the FLSA. Id. at 23. The Defendants move for summary judgment on all three counts. ECF No. 36. The Plaintiff filed a cross-motion for summary judgment as to Count III. ECF No. 38.

## II. Applicable Legal Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or

other evidence establishing there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

The Court will address each of the Plaintiff's allegations in turn.

### A. Count I – Breach of Contract

In Count I the Plaintiff alleges that the Defendants "breached their compensation contract with Plaintiff and other similarly-situated employee[s] when they failed and/or refused to pay to Plaintiff and other similarly-situated employees the wages owed to them as required by Defendants' tip pool compensation policy contract." ECF No. 17 at 22.

#### 1. Applicable Law

"In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract; and (3) damages arose from the breach." Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp. 2d. 731, 749 (N.D.W. Va. 2012). The "representations contained in an employee handbook or policy manual and intended to be used by employers can meet the normal

requirements for formation of an implied contract." <u>Younker v. E. Associated Coal Corp.</u>, 591 S.E.2d 254, 258 (2003).

### 2. Analysis

Assuming arguendo that the Defendants' PTO and tip pooling policies constitute an implied contract between the Defendants and their employees, the terms of those contracts are as follows.[5]

The PTO policy provides that "full-time team members are eligible to accumulate PTO based upon length of continuous service and regular hours worked," and "part-time team members are eligible to accumulate PTO based on hours worked." ECF No. 40-2 at 2. The policy specifies how much PTO an employee can accrue and provides that "[w]hen the maximum [amount of PTO] is reached, further accumulation stops until PTO is used." <u>Id.</u> at 2-3. With regard to scheduling PTO, the policy states that "[e]very effort will be made to accommodate the Team Member's request for PTO. However, PTO will be scheduled based upon the mutual needs of the individual, the department and the Company." <u>Id.</u> at 4. The policy defines "authorized PTO" as "PTO used with prior notice and management approval." <u>Id.</u> When dealers take "authorized PTO" they are paid by Hollywood Casino at their hourly rate and receive an additional $10.00 per hour from that gaming day's tip pool. ECF No. 40-4 at 2. When a dealer's PTO is not authorized, the dealer is paid by Hollywood Casino at their normal hourly rate and is not eligible to participate in the tip pool.

To establish a breach of contract, the Plaintiff must show that the Defendants failed

---

[5] The tip pooling policy has been discussed at length in Part I.

to comply with a term in the written policies that constitute the implied contract. There is absolutely no evidence before the Court that the Defendants ever acted in contradiction to their written PTO and tip pooling policies. The Plaintiff argues that the Defendants breached their compensation contract because they "arbitrarily and in their sole discretion" refused to authorize PTO "simply because . . . they were not provided sufficient advance notice." ECF No. 40 at 18-19. However, this does not constitute a breach of contract because the implied contract (by way of the PTO policy) <u>explicitly</u> affords the Defendants the discretion to grant or deny PTO. The policy also explicitly states that an employee can only participate in the tip pool <u>if</u> her PTO is authorized by management. If the employee's PTO is <u>not</u> authorized, she will only receive her normal hourly wages.

### 3. Conclusion

Because the undisputed evidence shows that the Defendants act in accordance with their written policies, there can be no breach of contract. Accordingly, summary judgment must be granted in favor of the Defendants on this issue.

### B. Count II – West Virginia Wage Payment and Collection Act

In Count II, the Plaintiff alleges that the Defendants failed to pay the Plaintiff and similarly situated employees the wages owed to them under the WPCA.

### 1. Applicable Law

The WPCA requires "an employer to settle with all employees every two weeks and 'pay them the wages due'." <u>Robertson v. Opequon Motors, Inc.</u>, 519 S.E.2d 843, 847 (W. Va. 1999). The Act defines wages as "compensation for labor or services rendered by an employee . . . [and] all accrued fringe benefits capable of calculation and

payable directly to an employee." W. Va. Code § 21-5-1(c). Fringe benefits include any benefits provided by an employer, or which is required by law, including "regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses and accident benefits relating to medical and pension coverage." W. Va. Code § 21-5-1(l). While the Act does not require that employers provide "fringe benefits," if an employer establishes a fringe benefit, "the Act demands that the [employer] honor its agreement and pay its employees the [fringe benefit] they have earned." Robertson, 519 S.E.2d at 848.

### 2. Analysis

It is undisputed that the Defendants are not required by law to offer PTO to their employees. However, it is also undisputed that the Defendants offer their employees PTO as a "fringe benefit." See ECF No. 40-2 (outlining Defendants' PTO policy). The Defendants' PTO policy explicitly outlines the parameters of the "fringe benefit." Specifically, it states that "full-time team members are eligible to accumulate PTO based upon length of continuous service and regular hours worked," and "part-time team members are eligible to accumulate PTO based on hours worked." Id. at 2. The policy specifies how much PTO an employee can accrue and provides that "[w]hen the maximum [amount of PTO] is reached, further accumulation stops until PTO is used." Id. at 2-3.

With regard to scheduling PTO, the policy states that "[e]very effort will be made to accommodate the Team Member's request for PTO. However, PTO will be scheduled based upon the mutual needs of the individual, the department and the Company." Id.

9

at 4. The policy defines "authorized PTO" as "PTO used with prior notice and management approval." Id. When a dealer takes "authorized PTO" Hollywood Casino pays the dealer at his or her hourly rate and the dealer receives an additional $10.00 per hour taken from that gaming day's tip pool. ECF No. 40-4 at 2. When a dealer's PTO is not authorized, Hollywood Casino pays the dealer at his or her hourly rate, but the dealer is not eligible to participate in the tip pool.

As discussed above, there is no evidence before the Court that the Defendants have not followed their explicit written policy regarding PTO. The Plaintiff argues that the Defendants do not honor their PTO agreement because they "arbitrarily and in their sole discretion" refuse to authorize PTO "simply because . . . they [are] not provided sufficient advance notice." ECF No. 40 at 18-19. For example, the Plaintiff requested leave in December 2017. Her PTO was not authorized because she did not request the PTO fourteen days in advance. Accordingly, pursuant to the Defendants' PTO policy, the Plaintiff only received her hourly wage and was not eligible to participate in the tip pool.

However, the fact that the Plaintiff did not receive additional wages from the tip pool does not mean that the Defendants failed to pay the Plaintiff a fringe benefit she is due. The Defendants' PTO policy provides that PTO will not be considered "authorized PTO" unless the employee gives notice fourteen days in advance and the PTO is approved by management. Thus, the policy explicitly affords the Defendants the discretion to grant or deny PTO. There is no automatic legal right to PTO, and so long as the Defendants pay the fringe benefit in accordance with their policy, there is no

violation of the WPCA.   In this case, the undisputed evidence shows that the Defendants are "honoring their agreement," and "paying their employees the fringe benefit they have earned."

### 3. Conclusion

Because the Plaintiff and other similarly-situated employees have been paid all the wages owed to them, there is no violation of the WPCA.   Summary judgment must be granted in favor of the Defendants on this issue.

### C. Count III – Fair Labor Standards Act

Finally, Count III alleges that the Defendants violated the FLSA because the Defendants' tip pool shared tips with persons who do not "customarily and regularly receive tips" as required by 29 C.F.R. § 531.37.   ECF No. 39 at 5.   Thus, the Plaintiff argues that dealers were not permitted to retain all of their tips as required by 29 U.S.C. § 203(m).   Id.

### 1. Applicable Law

Under the FLSA, a tipped employee is an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."   29 U.S.C. § 203(t); 29 C.F.R. § 531.50(b).   "The phrase 'customarily and regularly' signifies a frequency which must be greater than occasional, but which may be less than constant." 29 C.F.R. § 531.57.   Thus, if an employee "normally and recurrently receives more than $30 a month in tips, he will be considered a tipped employee even though occasionally because of sickness, vacation, seasonal fluctuations or the like, he fails to receive more than $30 in tips in a particular month."   Id.   However, the fact that an employee "is part

11

of a group which has a record of receiving more than $30 a month in tips" does not qualify him as a tipped employee. 29 C.F.R. § 531.56(c). Additionally, when an employee is employed in a "dual job, as for example, where a maintenance man in a hotel also serves as a waiter," he is only a tipped employee with respect to his employment as a waiter. 29 C.F.R. § 531.56(e). In that case, the employee has two occupations, and he earns tips only when working as a waiter. Id.

While an employer may not keep tips received by its employees under any circumstance, "the requirement that an employee must retain all tips does not preclude a valid tip pooling or sharing arrangement among employees who customarily and regularly receive tips." U.S. Dep't of Labor, Wage & Hour Div., Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (April 2018); see also 29 U.S.C. § 203(m)(2). Employers are permitted to develop a "pooling arrangement whereby the employer redistributes the tips to the employees" so long as: (1) the tip pool only includes those employees who customarily and regularly receive tips; (2) the employer notifies its employees of the required contribution amount; and (3) the employer does not retain any of the employees' tips for any other purpose. 29 C.F.R. § 531.54.

### 2. Analysis

Here, the Plaintiff challenges the Defendants' tip pool because the tip pool redistributes tips to dealers out on authorized PTO. See supra Part I. The Plaintiff argues that employees who are out on PTO are not employees who "customarily and regularly receive tips." The Plaintiff argues that "dealers should only receive tips for the hours that they [actually] work" because dealers are not "tip generating employees when

they are out on leave." ECF No. 39 at 12. However, the Plaintiff cites no case law, statute, or regulation that prohibits the distribution of tips to employees who are out on vacation, when those employees otherwise customarily and regularly receive tips.

The regulations are clear. If an employee "normally and recurrently receives more than $30 a month in tips, he will be considered a tipped employee <u>even though occasionally because of sickness, vacation, seasonal fluctuations or the like</u>, he fails to receive more than $30 in tips in a particular month." 29 C.F.R. § 531.57 (emphasis added). The regulations specifically account for employees who do not generate more than $30 in tips because they are out on vacation—the employee's vacation status does <u>not</u> change their eligibility to participate in a tip pool.

The Plaintiff also argues that the Defendants' tip pool is unlawful because the pool "improperly withholds employees' earned tips because employees are required to pay into the tip pool but do not necessarily get paid out." ECF No. 39 at 13. Specifically, the Plaintiff argues that the Defendants have created a system that unevenly distributes tips because the Defendants: (1) "authorize or deny PTO at their discretion"; (2) "subtract from the employees' PTO bank when they go on unauthorized leave"; and (3) "cap the number of hours of PTO" that an employee can accumulate. ECF No. 39 at 15. The Plaintiff argues that this uneven distribution of tips is unlawful.

As the Defendants' note in their response, "tip pools, by definition, result in tips being reallocated among employees. As a result, some employees ultimately receive more tips than they contributed to the pool, and some employees ultimately receive fewer tips than they contributed." ECF No. 41 at 6. See e.g., 29 C.F.R. § 531.54 (providing

13

that a busboy can participate in a tip pool even though he does receive tips directly). A "pooling arrangement whereby the employer redistributes the tips to employees" is valid so long as all employees participating in the pool customarily and regularly receive tips and none of the tips are retained by the employer "for any other purpose." 29 C.F.R. § 531.54. As discussed above, every employee participating in the Defendants' tip pool is customarily and regularly tipped. Moreover, the undisputed evidence shows that the entire tip pool is redistributed back to the employees. No portion of the tip pool is retained by the Defendant for any other purpose. Therefore, it is irrelevant that some employees may ultimately receive fewer tips than they contributed to the tip pool.

### 3. Conclusion

In sum, the Defendants provide their employees with sufficient notice of the mandatory tip pool. All employees that participate in the tip pool are customarily and regularly tipped. Finally, there is no evidence that the Defendants retain any portion of the tip pool for any purpose. The entire pool is distributed to qualifying dealers, who, as discussed above, are customarily and regularly tipped employees. For these reasons, the Defendants' tip pool policy meets the requirements of the FLSA and the Defendants are entitled to summary judgment on Count III alleging violations of the Fair Labor Standards Act.

### IV. Conclusion

For the aforementioned reasons, the Court **ORDERS** that the Defendants' Motion for Summary Judgment [ECF No. 36] is **GRANTED**. The Plaintiff's Cross-Motion for Partial Summary Judgment [ECF No. 38] is **DENIED**.

The Clerk of Court is **DIRECTED** to enter a separate judgment in favor of the Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure. The Clerk is further **DIRECTED** that this case shall be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the Court's active docket.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** February 22, 2019

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE